870 A.2d 753

CHRISTINA R. MARCINKIEWICZ, INDIVIDUALLY AND AS AD-
MINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF
EVERETTE R. MARRERO, DECEASED, PLAINTIFF–APPEL-
LANT, v. RUBEN MARRERO AND SONIA MARRERO, DEFEN-
DANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 15, 2005—Decided April 18, 2005.

Before Judges KESTIN, LEFELT and FALCONE.

*Fred Shahrooz Scampato* argued the cause for appellant.

*David A. Parinello* argued the cause for respondents (*Parinello & Noto,* attorneys; *Mr. Parinello,* on the letter brief).

The opinion of the court was delivered by

KESTIN, P.J.A.D.

Plaintiff, Christina R. Marcinkiewicz, suing individually and on behalf of the Estate of Everette R. Marrero, appeals from an order dismissing her claims against defendants, Ruben Marrero and Sonia Marrero. Marcinkiewicz is the mother of decedent, who was nineteen years of age when he died and, at the time, resided with his father, Ruben Marrero.

The causes of action as initially alleged in the five-count complaint were "wrongful death . . ., child injured by parent's supervision . . ., life not rescued or saved . . ., domestic violence civil liability . . ., and dereliction of duty of custodial parent resulting in anguish and loss to plaintiff." The amended complaint alleges the first four counts. It seeks damages for the death of decedent caused by cirrhosis of the liver and related conditions stemming from years-long consumption of alcohol.

In a prior appeal under docket no. A–2092–02, in an unpublished opinion, we reversed a trial court order denying plaintiff's motion to reinstate her previously dismissed complaint. As the matter came on for trial, Judge Edward J. Ryan noted "everyone's surprise [ ] that there's a 1995 order ... which emancipated the decedent at the request of the plaintiff mother[.]" He found it undisputed that before the child was declared emancipated at about the age of seventeen, the parties had had joint legal custody of the child. Initially, residential custody was with the mother. Later, it was transferred to the father, but both parties maintained joint legal custody at all times while their son remained unemancipated. Judge Ryan went on to observe:

> That gave both parties, mother and father, regardless of the residential custody, some control over the lifestyle of this child, over his health, education and general welfare. I don't think anyone can dispute that, that's basic family law, parent/child law.

> Obviously, both parents were aware of this young man's propensity for alcohol and/or drugs, ... mentioned here, as well. The Court now finds itself on the proverbial horns of a dilemma to determine whether or not the mother has a cause of action on her own individually and as the administratrix ... ad prosequendum of the estate of her son for allegations of negligence against the father, who last had residential custody of the boy. There would be no question that this trial would be proceeding on those issues if the emancipation had not occurred. We find out on the commencement of the trial, in fact, after the commencement, after the jury's been seated and sworn that, in fact, a genuine order executed in 1995 has emancipated the decedent child.

> It's significant that the emancipation order was granted at the application of the mother, who is the plaintiff in this matter, only because she has the responsibility and she is charged with the responsibility of having known that he was emancipated from that time forward and fails to properly state that in the complaint which she has filed and in the amended complaint which was filed on or about January 22nd of 2001.

> The Courts of this State clearly have created a duty and enforced a duty of ... persons with knowledge of potential dangers and foreseeable dangers as to third parties and the fact that warnings, in certain cases, should take place and that a failure to warn, in some cases, does produce and create a liability.

> The host theory of liability, which is put forward by plaintiff's attorney, arises out of a statutory cause of action created by the Legislature. [See N.J.S.A. 2A:15–5.5 to –5.8.] Regarding host liability and the use of alcoholic beverages, and perhaps the misuse of alcoholic beverages as it may affect third parties, it doesn't provide for direct liability. It's a creature of statute and it doesn't apply in the circumstances of this particular case.

The facts of this case, uncontradicted, appear to be that this young man developed a taste for alcohol and apparently use of drugs at a time when he was unemancipated, continued beyond his emancipation in 1995. Clearly, self-imposed addiction. There's no indication of a direct condonation of that conduct by his father. There are allegations that it was permitted but, clearly, the father did not participate in drinking with the boy, providing him directly with alcohol, although there may be a question as to whether ... or not he knew the activity was taking place. Technically and legally, the father had no control over whether or not, for instance, Everette, the decedent son, would stay in the household. If he had the ability and the desire to do so, he could remove himself from the household and join the military service, marry or pursue any course of conduct which he chose to and, there being no obligation by the father to direct him or guide him, nor could the father have any ability to prevent him from acting as his own person.

It is questionable as to what control or authority to control Mr. Marrero would have had when, in fact, for that matter, to a lesser degree, Sonia Marrero, the co-defendant would have had to control the conduct of the decedent son. Clearly, again, these counts in the amended complaint were drafted on the basis of an unemancipated child, even construed in the light most favorable to the plaintiff's allegations of liability because it has clearly been determined that, in fact, as a matter of law, the decedent was emancipated since 1995. Counts one and two fail to state a claim upon which relief can be granted. Counts three and four have already been dismissed [on a pre-trial order granting partial summary judgment] and, therefore, the complaints are dismissed with prejudice.

I will discharge the jury[.]

\* \* \* \*

... I understand this was rather unusual circumstances that led to this hearing before the Court and this motion, and we didn't realize it until yesterday and I'm sure it comes as a surprise to the parties as to the determination being made. I made my determination based upon the law in the case before me. I hope it suits your mutual purposes[.]

We have reviewed the record in the light of the written and oral arguments advanced by the parties. Applying prevailing principles of law to the facts of the matter, we reach the same conclusions as Judge Ryan did for similar, but not identical, reasons.

On appeal, as before the trial court, plaintiff has conceded that she advances a novel theory of tort liability. In this acknowledged case of first impression, she seeks a ruling that a homeowner and father who, "with careless indifference and reckless disregard" for the consequences, permits excessive consumption of alcohol on his premises, is liable for the damages caused thereby, not only to

third parties, but to the drinker himself and those who assert derivative claims.

On the facts presented, we reject plaintiff's invitation to declare a new rule of tort law.

> In determining whether a duty is to be imposed, courts must engage in a rather complex analysis that weighs and balances several, related factors, including the nature of the underlying risk of harm, that is, its foreseeability and severity, the opportunity and ability to exercise care to prevent the harm, the comparative interests of, and the relationships between or among, the parties, and, ultimately, based on considerations of public policy and fairness, the societal interest in the proposed solution.
>
> [*J.S. v. R.T.H.*, 155 *N.J.* 330, 337, 714 *A.*2d 924 (1998)(citing *Hopkins v. Fox & Lazo Realtors*, 132 *N.J.* 426, 439, 625 *A.*2d 1110 (1993)).]

"The question whether there is a 'duty' merely begs the more fundamental question whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Libbey v. Hampton Water Works Co.*, 118 *N.H.* 500, 389 *A.*2d 434, 435 (1978)(citing *Prosser on Torts* § 53, at 325 (4th ed.1971))(quoted in *Weinberg v. Dinger*, 106 *N.J.* 469, 481, 524 *A.*2d 366 (1987)). The imposition of a duty of care, therefore, requires an evaluation of the relative interests of the respective parties. *See Portee v. Jaffee*, 84 *N.J.* 88, 101, 417 *A.*2d 521 (1980). That evaluation includes an assessment of the defendant's responsibility for conditions creating the risk of harm, and an analysis of whether the defendant had sufficient control, opportunity, and ability to have avoided the risk of harm. *See Carvalho v. Toll Brothers and Developers*, 143 *N.J.* 565, 574–76, 675 *A.*2d 209 (1996). To the extent the plaintiff herself has had an involvement and responsibility, her conduct must be assessed on the same basis.

"The issue is whether, 'in light of the actual relationship between the parties under all of the surrounding circumstances,' the imposition of a duty ... is 'fair and just.' " *Brett v. Great American Recreation, Inc.*, 144 *N.J.* 479, 509, 677 *A.*2d 705 (1996)(quoting *Hopkins, supra*, 132 *N.J.* at 438, 625 *A.*2d 1110). "Ultimately, the determination of the existence of a duty is a question of fairness and public policy." *Kuzmicz v. Ivy Hill Park Apts., Inc.*, 147 *N.J.* 510, 515, 688 *A.*2d 1018 (1997).

 In the present matter, the record shows that defendants had knowledge of Everette's alcohol consumption and drug use since 1994, when decedent was only 14 or 15 years old, at the time residential custody was transferred from plaintiff mother to defendant father. Ruben Marrero also testified in depositions that he smelled alcohol on his son's breath on several occasions when Everette was only 16. Moreover, a friend of the decedent testified that he saw Everette drinking beer in defendant's presence before the decedent even turned 18 years old. Thus, Everette's development of a drinking problem, and, as a result, severe liver disease, was clearly foreseeable in the circumstances.

It is apparent, also, that plaintiff was aware of the developing problem. Notwithstanding that decedent had resided with defendants in the years just before his death, defendants had no greater capacity than plaintiff did to modify decedent's conduct over the period of years it must have taken, according to plaintiff's medical expert, for decedent's condition to develop into life-threatening cirrhosis of the liver. *See Carvalho, supra,* 143 *N.J.* at 576–77, 675 *A.*2d 209 (establishing that "actual awareness or knowledge of the risk of harm" and "actual knowledge of an unsafe condition" are important considerations in assessing "the fairness in imposing a duty of care").

 At one time, the parents had joint legal custody of their son, and, at times, he resided with each of them. Residential custody was transferred from plaintiff to defendant in 1992 and, eventually, in 1995, at plaintiff's behest, decedent was emancipated.

> Emancipation is the "act by which one who was unfree, or under the power and control of another, is rendered free, or set at liberty and made his own master." "The term is principally used with reference to the emancipation of a minor child by its parents, which involves an entire surrender of the right to the care, custody and earnings of such child as well as a renunciation of parental duties."
>
> [*Schumm v. Schumm,* 122 *N.J.Super.* 146, 149, 299 *A.*2d 423 (Ch.Div.1973) (quoting *Black's Law Dictionary* 613 (4th ed.1951)).]

Divorced parents are "equally charged with their children's care, nurture, education and welfare," obligations that terminate upon a

child's emancipation. *Gac v. Gac,* 351 *N.J.Super.* 54, 61, 796 *A.*2d 951 (App.Div.2002). *See N.J.S.A.* 9:2–4; *Grotsky v. Grotsky,* 58 *N.J.* 354, 356–57, 277 *A.*2d 535 (1971).

We discern no basis for imposing liability in favor of a chronic drinker, or one making a derivative claim, for failure to limit the drinker's freedom of action where he was, legally, an adult; or to impose liability on one parent in favor of the other for the consequences of acts committed by their eventually emancipated child with respect to his own well-being, where the parents have stood and stand in legally equivalent positions. To the extent plaintiff had reason to perceive, as she clearly did, that her son was engaging in self-destructive behavior, she, when invested with joint legal custody, and possibly even after having sought the child's emancipation, had the same legally available capacity to address the problem as defendant father did, rather than the course of inaction she took with respect to the child's addiction. Having elected that course, plaintiff cannot be heard to transfer sole parental responsibility to the other parent just because, with her acquiescence or at her choice, the child resided with him.

Affirmed.